**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Vaso Active Pharmaceuticals, Inc.,<br><br>Debtor. | Chapter 11<br><br>Case No. 10-10855 (CSS)<br><br>**Docket Nos. 18, 40 and 51** |

**DEBTOR VASO ACTIVE PHARMACEUTICALS, INC.'S**
**SUR-REPLY IN OPPOSITION TO THE NOTEHOLDERS' MOTION TO CONVERT**
**<u>CASE TO CHAPTER 7</u>**

                                          Michael R. Lastowski (DE 3892)
                                          Christopher M. Winter (DE 4163)
                                          Duane Morris LLP
                                          1100 North Market Street, Suite 1200
                                          Wilmington, DE 19801-1246
                                          (302) 657-4942
                                          mrlastowski@duanemorris.com
                                          cmwinter@duanemorris.com

                                          Thomas H. Curran
                                          Eric D. Levin
                                          Jennifer V. Doran
                                          Hinckley, Allen & Snyder LLP
                                          28 State Street
                                          Boston, MA  02109
                                          (617) 345-9000
                                          tcurran@haslaw.com
                                          elevin@haslaw.com
                                          jdoran@haslaw.com

                                          *Attorneys for the Debtor and*
                                          *Debtor in Possession*

Dated:  May 20, 2010

Debtor Vaso Active Pharmaceuticals, Inc. (the "Debtor") submits this Sur-reply in Opposition to the Motion to Convert Case to Chapter 7 (the "Motion to Convert") filed by Iroquois Master Fund, Ltd. ("Iroquois Fund"), Smithfield Fiduciary LLC, Rockmore Investment Master Fund, Ltd., Otago Partners LLC, as assignee of RAQ LLC, and Portside Growth and Opportunity Fund (collectively, the "Noteholders").

## I.     INTRODUCTION

Having failed in the Motion to Convert to establish cause for the conversion of this bankruptcy case to Chapter 7, the Noteholders now raise in their reply a flurry of new allegations and arguments. They even argue that the case was filed in bad faith, a grounds for dismissal, which the Noteholders did not request in the Motion to Convert. The new arguments fall short and the Noteholders continue to fail to establish requisite cause for conversion. The evidence bears out that the Debtor's estate has not experienced substantial (or any) diminution in value since the Petition Date. Further, the Debtor intends to file a viable and confirmable plan of reorganization within the next sixty (60) days. The Debtor is presently in advanced negotiations with a medical device company regarding a transaction that will form the basis for a plan of reorganization that will allow the Debtor to realize the potential of its valuable assets for the substantial benefit of *all* of its creditors. As such, the Motion to Convert should be denied.

## II.     STATEMENT OF FACTS

1.     The Debtor filed this bankruptcy case on March 11, 2010 (the "Petition Date"). On March 31, 2010, a mere 20 days after the Petition Date, the Noteholders filed the Motion to Convert. The Noteholders provided two reasons for the conversion of this case to Chapter 7, namely the alleged diminution in the value of the Debtor's assets and the impossibility of a successful reorganization.

2.	On April 26, 2010, the Debtor filed an opposition to the Motion to Convert (the "Opposition") and thoroughly refuted the Noteholders' arguments for conversion. The Debtor demonstrated that its assets had suffered no diminution in value since the Petition Date and that the Noteholders' reliance on pre-petition events was inappropriate under 11 U.S.C. § 1112(b) and applicable case law. Further, the Debtor showed that it had a probable chance of reorganization through a merger or other combination with one of several pharmaceutical or medical device companies who were interested in partnering with the Debtor.

3.	After the Debtor filed the Opposition, the Noteholders and the Debtor engaged in discovery and took depositions of the others' witnesses. The discovery process did not yield any information to support the Noteholders' claims that the Debtor's assets were substantially diminishing or that the Debtor had no reasonable likelihood of reorganizing.

4.	In their reply to the Opposition filed on May 18, 2010 (the "Reply"), the Noteholders declare the discovery of numerous facts that allegedly support the conversion of the case. However, none of the facts raised by the Noteholders establish the two prongs that the Noteholders must meet to establish cause for conversion, namely that the Debtor's assets diminished in value following the Petition Date and the Debtor has no possibility of reorganization.

5.	The discovery process has not added any facts that support the Motion to Convert. Further, the allegedly newly discovered facts primarily focus on the Debtor's business in the year or more prior to the Petition Date and do not bear on the Debtor's post-petition actions. The relevant facts remain:

- The Debtor possesses the same assets it had as of the Petition Date, and these assets have not suffered any diminution in value.

- The Debtor's business is not defunct, but remains at largely the same level as it has sustained for the past few years.

- The Debtor sought the protection of this Court for legitimate reorganizational purposes and in good faith, even though such filing increased the potential personal liability of the Debtor's management.

- The Debtor has the opportunity to reorganize and provide a return to all creditors, and the Debtor is requesting a very limited period of time in which to demonstrate its ability to reorganize.

- Creditors will not be harmed in any manner if the Court provides the Debtor with 60 days to file a confirmable plan, whereas conversion certainly will lead to no recovery whatsoever for creditors.

### III.   ARGUMENT

The Noteholders have the burden of establishing cause for conversion.  See In re Motel Properties, Inc., 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004).  As set forth herein, the "new facts" in the Reply do not establish cause under 11 U.S.C. § 1112(b).  The Noteholders have not met their burden, and the Motion to Convert must be denied.

### A.    The Debtor's business is not defunct, but remains consistent with its pre-petition activities.

The Noteholders allege that the Debtor's business is defunct such that it is unlikely to be reorganized.  Such statements are false.  The Debtor continues to provide its products through on-line orders and to small retail establishments at levels consistent with its practices over the past few years.  The level of the Debtor's business has not undergone a significant change since the Petition Date, or since the years leading to the Petition Date.

Further, the level of sales does not bear on the Debtor's ability to reorganize because the Debtor's reorganization will be through a strategic partnership, likely with a medical device or pharmaceutical company. The Debtor will combine its intellectual property license (the "License"), public company platform and investor base with the intellectual property assets of its partner to develop and market entirely new products. As such, the Noteholders' arguments regarding current product sales are irrelevant to the Debtor's reorganization.

The Debtor has never been able to realize the full potential of its assets because litigation with the Securities and Exchange Commission and ensuing malpractice litigation against its former counsel (the "Malpractice Litigation") hindered the Debtor's growth from nearly the beginning of its corporate existence (See Opposition at pp. 3 and 9). With the settlement of the Malpractice Litigation, the Debtor finally is in a position to derive value from its assets and become a profitable enterprise. The Debtor has maintained the License, employees, location, website and business contacts and is ready to merge with a company whose assets complement the Debtor's.

### B. The Debtor has not been derelict in its duties but rather is acting for the benefit of *all* creditors.

The Noteholders allege that the Debtor failed to keep the Noteholders informed about the Malpractice Litigation and paid wages to management in violation of its duties to its creditors. Such allegations are false. First, while the the Noteholders focus solely on the impact of this case to their interests, the Noteholders are not the only creditors of the Debtor. Second, the Debtor kept the Noteholders informed about the Malpractice Litigation and remained in regular contact with the Noteholders (or their counsel) up to the Petition Date.

The Noteholders' allegations regarding the payment of wages to Mr. Frattaroli and Mr. Masiz are particularly inflammatory and inaccurate. Mr. Frattaroli and Mr. Masiz agreed to

defer their salaries pending the successful resolution of the Malpractice Litigation, and such agreement was essential to the Debtor's ability to complete such litigation. The deferred salaries (the "Deferred Wages") were paid to Mr. Frattaroli and Mr. Masiz only after the Debtor received the Settlement Funds. Further:

*Massachusetts law mandates the payment of wages*. The Debtor was required by state law to pay wages for its employees. See M.G.L. c. 149, § 148. The Debtor had no option but to pay salaries to Mr. Frattaroli and Mr. Masiz.

*An independent Board approved the Deferred Wages after thorough review and briefing by outside counsel*. The Debtor's Joint Compensation and Audit Committees were tasked with reviewing and approving the agreement regarding the Deferred Wages, the amount of such Deferred Wages, and the procedure for payment. Beginning at least in April 2009, the Joint Committees began soliciting information about appropriate salaries, conducted a review of compensation structures at comparable companies in the geographic region, reviewed a detailed list of the accomplishments of management over the five years prior to payment and determined the appropriate amounts payable to Masiz and Frattaroli. See Exhibit A (minutes of the independent Board of Directors meeting dated April 21, 2009) and Exhibit B (minutes of the independent Board of Directors meeting dated May 11, 2009). The report of the Joint Committees (the "Joint Report") was presented to the Debtor's independent Board of Directors.

The independent Board approved the payment of the wages at a meeting of the Board held on August 19, 2009 after consideration of the Joint Report and advice from outside counsel engaged for the purpose of reviewing the Deferred Wages agreement and the Debtor's agreement with counsel in the Malpractice Litigation. See Exhibit C (minutes of the independent Board of Directors meeting dated August 19, 2009 and accompanying memoranda and reports). The

payment of interest also was approved by the independent Board of Directors. Given the thoroughness of the analysis to determine the appropriate salary amounts, the complete transparency of the process and the full disclosure to an independent Board, any allegations of dereliction of duties are utterly misguided.

*An independent trustee will investigate the payment of the Deferred Wages*. The Debtor's proposed plan of reorganization will include a provision for the appointment of an independent trustee to review the payment of the Deferred Wages. The independent trustee will determine whether the Deferred Wages constitute preferential transfers that should be avoided for the benefit of all creditors. Creditors will have the security of this independent verification that the actions of the Debtor's management were appropriate and in the best interest of creditors.

*The bankruptcy filing was directly against the self-interest of the Debtor's management*. The Noteholders' claim that the Debtor's management engaged in self-dealing by filing this case is particularly illogical. The very filing of the petition exposed management to claims that would not exist outside of bankruptcy, namely the potential for the Deferred Wages to be characterized as preferential transfers under 11 U.S.C. § 547. If management were acting for improper purposes, it would not commence a case in the only forum in which the Deferred Wages could be avoided as preferential transfers. In commencing this case, management understood that the Deferred Wages would be scrutinized, but management still voted to file the petition for the benefit of all creditors.

**C.    The bankruptcy case was filed in good faith for the legitimate purpose of reorganizing the Debtor.**

The Noteholders question whether the case was commenced in good faith, but none of the arguments raised by the Noteholders provide any evidence whatsoever that the Debtor filed this case for improper purposes. The Debtor filed the petition to obtain 'breathing room'

following the settlement of the Malpractice Litigation and commencement of the state court litigation with Iroquois Fund. The Debtor needed time to assess its assets and determine the best way to maximize the value of such assets for the benefit of all creditors. The Bankruptcy Court was the only forum in which the Debtor could resolve its dispute with the Noteholders regarding its security interest in the Settlement Funds, resolve its issues with other creditors, preserve its assets and restructure its business.

The Noteholders' demand for turnover of the Settlement Funds necessitated the Debtor's filing of the petition. By seeking bankruptcy protection, the Debtor preserved its claims against the Noteholders regarding their alleged security interest in the Settlement Funds. The scope of the Noteholders' security interest in the Debtor's assets did not include an interest in the Malpractice Litigation. Once the Malpractice Litigation resulted in the Debtor's receipt of the Settlement Funds, the Noteholders claimed that such Funds were included in the Noteholders' security interest. The Debtor believes in good faith that the Noteholders' claim to the Settlement Funds is not superior to the claim of any other creditor, but only by filing the bankruptcy case could the Debtor preserve its ability to object to the Noteholders' alleged security interest and bring an avoidance action under 11 U.S.C. § 547 to avoid any security interest that may have arisen when the Debtor received the Settlement Funds.

        **D.**     **The estate has not diminished in value since the Petition Date.**

As set forth in its Opposition, the Debtor's estate has not diminished in value. The cash that the Debtor had on hand as of the Petition Date remains largely unchanged at this time. Any ongoing business expenses have been funded with equity infusions from the Debtor's parent company, Biochemics, Inc. ("Biochemics"), such that the Debtor's estate is unchanged in value and creditors have suffered no diminution whatsoever. Biochemics is funding ordinary expenses

such as the salary of the administrative assistant, insurance and copier lease, and the Debtor is not even accruing the salaries of Mr. Frattaroli or Mr. Masiz.

The Debtor's assets, which include the License, its investor base and public company platform, are ready to be incorporated into the Debtor's plan of reorganization. None of the Debtor's post-petition actions have in any way jeopardized its ability to reorganize. Indeed, the Debtor has just finalized a memorandum of understanding with a medical device company for a potential merger. The Debtor fully intends to emerge from bankruptcy as a profitable enterprise for the benefit of *all* creditors.

### E.  **The Debtor has a concrete and feasible plan for its reorganization.**

The Debtor has definitive plans for its reorganization, including an agreed-upon memorandum of understanding with a strategic partner with which the Debtor intends to merge. As such, the facts and equities favor providing the Debtor with the requested 60-day time period to complete its proposal for reorganization.

> As a general rule, if continuing a particular chapter 11 case would promote the twin goals of preserving viable businesses and maximizing the creditors' return, then the case is probably not a candidate for conversion or dismissal under section 1112(b).

7 Collier on Bankruptcy at ¶1112.04[4][a] (Scott, Sheinfeld, Sommer, Zaretsky, eds.) (15th ed. rev). Creditors will gain nothing from the conversion of the case at this time, but the Debtor has the opportunity to obtain real value for its assets and offer a return to its creditors. The Noteholders present no convincing arguments why the Debtor should not be provided with a mere two months to prove its ability to reorganize.

The 60-day period will not harm the Noteholders, because the Debtor's minor operating expenses are being funded by Biochemics. The estate's assets will remain unchanged, and all of the creditors stand to benefit from the Debtor's efforts to reorganize.

## IV.     CONCLUSION

The Noteholders fail to establish cause for conversion of the case to Chapter 7, and the newly raised allegations in the Reply do not establish cause.  The conversion of the case clearly is not in the best interests of creditors, and the Debtor is prepared to submit a feasible plan of reorganization that will benefit all creditors.  For these reasons, and the additional arguments contained in the Opposition, the Motion to Convert should be denied.

WHEREFORE, the Debtor respectfully requests that the Court deny the Noteholders' Motion to Convert the Debtor's Case to Chapter 7 of the Bankruptcy Code and grant such other relief as the Court deems just and equitable.

*/s/ Christopher M. Winter*

Michael R. Lastowski (DE 3892)
Christopher M. Winter (DE 4163)
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
(302) 657-4942
mrlastowski@duanemorris.com
cmwinter@duanemorris.com

Thomas H. Curran
Eric D. Levin
Jennifer V. Doran
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109
(617) 345-9000
tcurran@haslaw.com
elevin@haslaw.com
jdoran@haslaw.com

*Attorneys for the Debtor and Debtor in Possession*

Date:  May 20, 2010