# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ZLOOP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-11660 (KJC)<br><br>(Jointly Administered)<br><br>Re: D.I. Nos.: 432, 446, 464, 468, 471, 496, 499 and 504 |

### ORDER (A) AUTHORIZING THE SALE OF CERTAIN PROPERTY LOCATED IN HICKORY, NC FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS; (B) REGISTERING BACK-UP BIDDER AND BID AND (C) GRANTING RELATED RELIEF

This matter coming before the Court on the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**" or "**Sellers**") for the entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the Bankruptcy Court for the District of Delaware (the "**Local Rules**") (I)(A) approving procedures in connection with the sale of substantially all of the Debtors' assets located in Hickory, NC; (B) scheduling the related auction and hearing to consider approval of sale; (C) approving the form and manner of notice thereof; (D) approving the Bidder Protections; and (E) granting related relief; and (II)(A) authorizing the sale of such assets pursuant to the successful bidder's Purchase Agreement free and clear of liens, claims,

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtors' federal tax identification numbers are: ZLOOP, Inc. (2960); ZLOOP Nevada, LLC (7516); and ZLOOP Knitting Mill, LLC (7098). The location of the Debtors' headquarters and the service address for each of the Debtors is 816 13th Street NE, Hickory, NC 28601.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Purchase Agreement (as defined herein), unless the Sale is consummated with the Back Up Bidder, in which case

encumbrances, and other interests; (III) and granting related relief [D.I. 432]; the Court having found that (i) the Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); and (iv) notice of the Motion was sufficient under the circumstances; and the Court having reviewed (a) the Notice of Result of Auction and Filing of June 13, 2016 Auction Transcript [D.I. 496], (b) the Purchase and Sale Agreement submitted by Colt Refining, Inc. attached to such Notice as Exhibit A thereto (as the same was amended at the Auction and as may be amended prior to or at Closing, the "**Purchase Agreement**"),³ (c) the Transcript of the Auction attached to such Notice as Exhibit C thereto, (d) the Declaration of William H. Henrich, CRO, in Support of the Sale of the Hickory Assets [D.I.   ], and (e) the Declaration of Harvey Gottlieb in Support of Sale of Assets to Colt Refinfing, Inc. [D.I.   ]; and there having been no objections filed to the sale of the

---

undefined terms shall be defined as set forth in the Dynamic Recycling, Inc.'s Purchase Agreement and any amendments thereto.

³       The Hickory Assets include all of Seller's right, title and interest in and to (a) the real property commonly known as 816 13th Street NE, comprising 3 parcels, and 838 14th Street NE, Hickory, NC, as more particularly described on Exhibit A attached to Colt's Purchase Agreement, and any and all improvements thereon and appurtenances thereto (collectively, the "**Real Property**"); (b) the fixtures affixed thereto; (c) all personal property and equipment located on or relating to the Real Property or Sellers' trade or business conducted thereon as of the Closing Date (defined in Colt's Purchase Agreement), including without limitation, the assets described on Exhibit D to Colt's Purchase Agreement; and (d) all other property interests belonging or appurtenant to the Real Property, including but not limited to all mineral, oil, gas, geothermal and water rights, as well as all environmental, engineering, architectural and similar reports and studies in the possession of Seller; (e) to the extent designated by Purchaser prior to Closing, books and records of the Seller (the Real Property, together with all of the foregoing items in clauses (b) through (e) above, now or hereafter existing, collectively, the "**Property**" or "**Hickory Assets**"). The following assets shall be excluded from the Transaction (defined in Colt's Purchase Agreement): (a) cash; (b) accounts receivable; (c) defenses, objections, counterclaims and rights of set-off and recoupment with respect to any claim asserted against Seller; (d) claims and causes of action of the Sellers against third parties and insiders, whether or not pending as of the Effective Date; (e) claims and causes of action of the Sellers arising under Chapter 5 of title 11 of the United States Code; (f) Seller's books and records pertaining to Seller's organization and governance and all others not designated by Purchaser prior to Closing and (g) Seller's books and records pertaining to or in support of the excluded assets described in clauses (b) through (g), inclusive (collectively, the "**Excluded Assets**"). Furthermore, the Excluded Assets comprise all of the Sellers' interests in assets located in Fernley, NV. Finally, the real property commonly known as 838 14th Street NE, Hickory, NC (the "**Knitting Mill Parcel**") may become an Excluded Asset upon Purchaser's failure to exercise the Option (defined in Colt's Purchase Agreement) with respect thereto.

Hickory Assets; and after due deliberation the Court having determined that the relief relating to the sale of the Hickory Assets requested in the Motion is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

AND IT IS FURTHER FOUND AND DETERMINED THAT:

A. The Debtors' notice of the Motion, Bidding Procedures, the Auction and the hearing to approve any sale of the Hickory Assets (the "**Sale Hearing**") was appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

B. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

C. To the extent any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

D. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rule 6004(h), this Court finds that there is no just reason for delay in the implementation of this Order, and directs entry of judgment as set forth herein.

E. The Hickory Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

F.  The Debtors declared Colt Refining, Inc. ("**Colt**" or "**Purchaser**") the Successful Bidder (as defined in the Bidding Procedures Order) in a notice filed with this Court [D.I. 496] (the "**Notice of Successful Bidder**").[4]

G.  Pursuant to the Bidding Procedures Order, Dynamic Recycling, Inc. is the Back Up Bidder. In the event the Debtors consummate the Sale with Back Up Bidder, such entity (or its designee) shall benefit in all respects from the findings of fact and conclusions of law related to Purchaser under this Order.

H.  William H. Henrich, CRO ("**CRO**"), in such capacity, is authorized to convey, sell and assign good and marketable title to the Hickory Assets on behalf of the Sellers to Colt as the Successful Bidder at the conclusion of the Auction.

I.  The terms contained in the Purchase Agreement constitute the highest and best offer for the Hickory Assets and will provide a greater recovery for Sellers' estates for the Property than would be provided by any other available alternative. Sellers' determination that the Purchase Agreement constitutes the highest and best offer for the Property, after consulting with counsel for the Committee and Mr. Mosing, constitutes a valid and sound exercise of Sellers' business judgment. The Purchase Agreement and the Sale contemplated thereby represent a fair and reasonable offer to purchase the Property under the circumstances of the chapter 11 cases. No other entity or group of entities has presented a higher or otherwise better

---

[4] Through the Notice of Successful Bidder the Debtors declared that Dynamic Recycling, Inc. is the Back-Up Bidder having submitted a Back-Up Bid in the net amount of $2,083,000.00. *See* Dynamic Recycling, Inc.'s Purchase Agreement attached to the Motion as Exhibit B, Notice of Amendment thereto [D.I. 464] and Notice of Successful Bidder and Dynamic Recycling, Inc.'s amendment to its Purchase Agreement attached thereto as Exhibit B. In the event Colt fails to consummate the transactions contemplated by its Purchase Agreement, the Debtors are authorized to consummate the sale of the Hickory Assets to Dynamic Recycling, Inc. without further order of this Court and all references in this Order to Colt, Purchaser or Purchase Agreement shall be deemed to refer to Dynamic Recycling, Inc. and its Back Up Bid including Dynamic Recycling, Inc.'s Purchase Agreement and any amendments thereto under such circumstances. The Back Up Bid shall be open and irrevocable until the earlier of (i) the closing of the transaction with Colt Refining or (ii) the date that is thirty (30) business days after the entry of this Order.

offer to Sellers to purchase the Property for greater economic value to Sellers' estates than Purchaser.

J.  Given all of the circumstances of the chapter 11 cases and the adequacy and fair value of the consideration provided by Purchaser under the Purchase Agreement, the Sale constitutes a reasonable and sound exercise of Sellers' business judgment, is in the best interests of Sellers and the other Debtors, their estates, their creditors, and other parties in interest, and should be approved.

K.  Purchaser did not engage in collusion, is purchasing the Property in good faith and is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code. Neither Purchaser nor any of its affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns is an "insider" (as defined under section 101(31) of the Bankruptcy Code) of any Debtor. Therefore, Purchaser, and its designees, successors and assigns, are entitled to the full protections of section 363(m) of the Bankruptcy Code, and otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases in that: (1) Purchaser recognized that the Debtors were free to deal with any other party interested in acquiring the Property; (2) Purchaser complied with the provisions in the Bidding Procedures Order, including, without limitation, funding its Deposit prior to the Bid Deadline and increasing its funded Deposit on or before June 16, 2016 so that the sum of its funded Deposit equals 5% of the Purchase Price ($112,500.00); (3) Purchaser's bid was subject to the competitive bidding procedures set forth in the Bidding Procedures Order; (4) all payments to be made by Purchaser and other agreements or arrangements entered into by Purchaser in connection with the Sale have been disclosed; (5) Purchaser has not violated section 363(n) of the Bankruptcy Code by any action or inaction; and

(6) the negotiation and execution of the Purchase Agreement, including the Sale and Option contemplated thereby, were at arms' length and in good faith. There was no evidence of insider influence or improper conduct by Purchaser or any of its affiliates in connection with the negotiation of the Purchase Agreement with the Debtors.

L.    The Purchase Agreement does not commit Purchaser or its affiliates to offer employment to any of the Debtors' senior executives. The Purchase Agreement and the Sale do not contemplate the granting of any *in personam* release to any party.

M.    The Purchase Agreement and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. Neither the Debtors and Purchaser, nor any of their affiliates, officers, directors, members, partners, principals, or shareholders (or equivalent) or any of their respective representatives, successors, or assigns have engaged in any conduct that would cause or permit the Purchase Agreement or the consummation of the transactions contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

N.    By consummating the Sale pursuant to the Purchase Agreement, Purchaser is not a mere continuation of any Seller or any Debtor's estate, and there is no continuity of control, no common identity, and no continuity of enterprise between Purchaser and any Debtor. Purchaser is not holding itself out as a continuation of any Debtor. Purchaser is not a successor or successor in interest to any Debtor or any Debtor's estate by reason of any theory of law or equity, and the Sale does not amount to a consolidation, merger, or *de facto* merger of Purchaser and the Debtors. Neither Purchaser nor any of its affiliates and their respective successors, assigns, members, partners, principals, and shareholders (or equivalent) shall assume or in any way be responsible for any obligation or liability of any Debtor (or any affiliates thereof) and/or

EAST\125382078.2

any Debtor's estate, except with respect to liabilities and obligations respecting the ownership or operation of the Hickory Assets incurred or accruing from and after the Closing.

O. The transfer of the Property to Purchaser will be, as of the Closing Date, a legal, valid, and effective transfer of such assets, and vests or will vest Purchaser with all right, title, and interest of Sellers to the Property fee and clear of all Interests or Claims (as defined below) accruing, arising or relating thereto any time prior to the Closing Date.

P. Sellers may sell the Property free and clear of all Interests or Claims against any Seller, its estate, or any of the Property because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. If the Sale were not free and clear of all Interests or Claims, or if Purchaser would, or in the future could, be liable for any of the Interests or Claims, Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors and their estates and creditors. For the avoidance of doubt, the Debtors shall be deemed to have rejected all Interests, including any possessory interests, effective as of the Closing. The total consideration to be provided under the Purchase Agreement reflects Purchaser's reliance on this Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Property free and clear of all Interests or Claims.

IT IS HEREBY ORDERED THAT:

1. As set forth below, the Motion is GRANTED.

2. All objections and responses to the Motion that have not been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

EAST\125382078.2

3. Colt Refining, Inc.'s offer for the Property, as embodied in the Agreement of Purchase and Sale dated June 10, 2016 by and among the Debtors and Colt Refining, Inc. as amended by the Purchaser's final Auction Bid Submission dated June 13, 2016 (collectively, the "**Purchase Agreement**"), is the highest and best offer for the Property and is hereby approved.

4. The Purchase Agreement annexed hereto as <u>Exhibit 1</u> is hereby approved pursuant to section 363(b) of the Bankruptcy Code and the CRO, on behalf of the Debtors and their estates, is authorized, without further order of this Court, to consummate and perform all of the Sellers' obligations under the Purchase Agreement and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the Purchase Agreement.

5. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Property shall be sold and transferred to Purchaser free and clear of all liens, claims, interests, encumbrances, judgments, demands, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities related to the Employee Retirement Income Security Act of 1974, liabilities related to the Internal Revenue Code, or any other liability relating to Debtors' current and former employees, including any withdrawal liabilities (under any multiemployer pension plans or otherwise) or liabilities under any collective bargaining agreement or labor practice agreement, of the Debtors or any of the Debtors' predecessors or affiliates, claims, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent

EAST\125382078.2

or non-contingent, liquidated or unliquidated, matured or unmatured, material or non- material, disputed or undisputed, whether arising prior to or subsequent to the commencement of these chapter 11 cases, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability (collectively, "**Interests or Claims**") except as otherwise provided in the Purchase Agreement, with any and all such Interests or Claims to attach to proceeds of such sale with the same validity, priority, force and effect such Interests or Claims had on the Property immediately prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtors with respect to any such asserted Interests or Claims.

6. Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Sale by the Debtors to Colt Refining, Inc., of the Property and transactions related thereto, upon the Closing under the Purchase Agreement, are authorized and approved in all respects.

7. At the Closing of the Sale under the Purchase Agreement, in addition to any prorations, fees, costs, or other amounts that are Debtors responsibility at closing under the Purchase Agreement, the Debtors shall pay the following amounts from the Sale proceeds: (i) the allowed claim of Lake Electric Company, Inc.; (ii) unpaid 2015 real property ad valorem taxes with respect to the Property; (iii) unpaid taxes for tax years 2013 through 2016 with respect to the Debtors' personal property, which, if unpaid, would give rise to a lien on the Property; and to Back Up Bidder its Break-Up Fee and Expense Reimbursement.

8. Nothing contained in any chapter 11 plan confirmed in this case or any order confirming any chapter 11 plan, nor any order dismissing any case or converting it to chapter 7 shall conflict with or derogate from the provisions of the Purchase Agreement, any documents or instrument executed in connection therewith, or the terms of this Order.

EAST\125382078.2

9. The stay provided for in Bankruptcy Rule 6004(h) is hereby waived and this Order shall be effective immediately upon its entry.

10. The terms of this Order shall be binding on Colt Refining, Inc. and its designees, successors and assigns, the Debtors, creditors of the Debtors and all other parties in interest in the Bankruptcy Cases, and any successors of the Debtors, including any trustee or examiner appointed in these cases or upon a conversion of this case to chapter 7 of the Bankruptcy Code.

11. With respect to the transactions consummated pursuant to this Order, this Order shall be the sole and sufficient evidence of the transfer of title to Purchaser, and the Sale Transaction consummated pursuant to this Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Order, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state, and federal, state, and local officials, and each of such persons and entities is hereby directed to accept this Order as sole and sufficient evidence of such transfer of title and shall rely upon this Order in consummating the transactions contemplated hereby. Notwithstanding the foregoing, the provisions of Section 1146(a) shall not apply.

12. All entities that are presently, or on the Closing may be, in possession of some or all of the Property to be sold, transferred, or conveyed (wherever located) to Purchaser pursuant to the Purchase Agreement are hereby directed to surrender possession of the Property to Purchaser on the Closing Date.

13.     Upon consummation of the Sale set forth in the Purchase Agreement, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Property shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Property, or otherwise, then (a) the Debtors are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Property and (b) Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Interests or Claims in the Property of any kind or nature (except as otherwise assumed under, or permitted by, the Purchase Agreement); *provided,* that, notwithstanding anything in this Order or the Purchase Agreement to the contrary, the provisions of this Order shall be self-executing, and neither the Debtors nor Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.  For the avoidance of doubt, upon consummation of the Sale as set forth in the Purchase Agreement, Purchaser is authorized to file termination statements, lien terminations, or other amendments in any jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code.

14.     Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent) are not and shall not be (a) deemed a

"successor" in any respect to the Debtors or their estates as a result of the consummation of the transactions contemplated by the Purchase Agreement or any other event occurring in the Debtors' chapter 11 cases under any theory of law or equity, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors. The transfer of the Property to Purchaser under the Purchase Agreement shall not result in (i) Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Property, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, (ii) Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Property, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interests or Claims or (iii) Purchaser and its affiliates and their respective successors, assigns, members, partners, principals and shareholders (or equivalent), or the Property, having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement.

15. Following the Closing, no holder of an Interest or Claim in or against the Debtors or the Property at or before the Closing shall interfere with Purchaser's title to or use and enjoyment of the Property based on or related to such Interest or Claim or any actions that the Debtors may take in these chapter 11 cases or any successor cases.

16. The Debtors' CRO is hereby authorized to execute such documents and do such acts as are necessary or desirable to carry out the transactions contemplated by the terms and

conditions of the Purchase Agreement and this Order. The Debtors shall be, and they hereby are, authorized to take all such actions as may be necessary to effectuate the terms of this Order and the relief granted pursuant to this Order.

17. The Sale contemplated by the Purchase Agreement is undertaken by Purchaser without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the sale free and clear of all Interests or Claims), unless such authorization and consummation of such Sale are duly stayed pending such appeal. Purchaser is a good-faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. As a good-faith purchaser of the Property, Purchaser has not colluded with any of the other bidders, potential bidders, or any other parties interested in the Property, and therefore neither the Debtors nor any successor in interest to the Debtors' estates nor any other party in interest shall be entitled to bring an action against Purchaser or any if its affiliates, and the sale of the Property may not be avoided pursuant to section 363(n) of the Bankruptcy Code.

18. Purchaser is authorized to exercise the Option, and Sellers are authorized to convey free and clear of all Interests or Claims, respecting the Knitting Mill Parcel in accordance with the terms and conditions of the Purchase Agreement without further order of this Court. In the event such Option is not exercised by Purchaser (including if applicable the Back Up Bidder), Purchaser shall have no further obligations with respect to such parcel.

19. From time to time, as and when requested by any party, each party to the Purchase Agreement shall execute and deliver, or cause to be executed and delivered, all such

documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Sale, including such actions as may be necessary to vest, perfect or confirm, of record or otherwise, in Purchaser its right, title and interest in and to the Property; provided, however, the Debtors shall not be obligated to incur any obligation, liability or expenses in furtherance thereof.

20.  This Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and Colt's Purchase Agreement, all amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith.

21.  The failure specifically to include any particular provisions of the Purchase Agreement or any of the documents, agreements or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, agreement or instrument, it being the intent of the Court that the Purchase Agreement and each document, agreement or instrument be authorized and approved in its entirety.

22.  The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

Dated: _June 23_, 2016
Wilmington, Delaware

_____
Kevin J. Carey
United States Bankruptcy Judge